**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

Civil Action No. 26-cv-_____

UNITED STATES OF AMERICA,

Plaintiff,

v.

UNIVERSITY OF DELAWARE;
UNIVERSITY OF DELAWARE BOARD
OF TRUSTEES,

Defendants.

---

# COMPLAINT

---

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

1. Federal law prohibits illegal aliens from being eligible to receive postsecondary education benefits based on residence within a state if such benefits are denied to U.S. citizens residing in other states. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet, the University of Delaware has ignored this Congressional prohibition by offering in-state tuition for eligible illegal aliens.

2. The University of Delaware maintains a policy for Student Residency Classification for Tuition and Fee Purposes ("Residency Policy") that makes resident illegal aliens eligible for in-state tuition while denying that same benefit to U.S. citizens from other states. *See* Univ. of Del., *Student Residency Classification for Tuition and Fee Purposes,* Administrative

Policy Manual (June 2022) [hereinafter *Policy*].[1] That constitutes blatant unequal treatment favoring illegal aliens over U.S. citizens.

3. Worse, such preferential treatment is squarely prohibited by federal law mandating that "an alien who is not lawfully present in the United States *shall not* be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). Accordingly, under the Supremacy Clause of the Constitution, the Residency Policy's extension of eligibility for in-state tuition to illegal aliens is unconstitutional and must yield to federal law. *See* U.S. Const. art. VI, cl. 2.

4. Courts have long recognized 8 U.S.C. § 1623(a)'s preemptive effect. *See, e.g., Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (holding that Section 1623 "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible"); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a), "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *3 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

5. Numerous courts have struck down similar in-state tuition laws and policies as unconstitutional based on Section 1623's preemptive effect. *See, e.g., United States v. Kansas*, No.

[1] https://perma.cc/5JRM-LJFB.

5:26-cv-04066-HLT-BGS, 2026 WL 2654069, at *6 (D. Kan. Sept. 9, 2026) (Memorandum and Order) (finding Kansas in-state tuition statute "preempted because it confers a postsecondary education benefit on an unlawfully present alien based on a state-defined residency conclusion without making that same benefit generally available to United States citizens and nationals regardless of their residence"); *United States v. Illinois*, No. 25-cv-1691-DWD, 2026 WL 2137256, at *8–11 (S.D. Ill. July 24, 2026) (finding Illinois in-state tuition statutes as applied to illegal aliens expressly preempted by Section 1623(a)); *see also United States v. Texas*, No. 7:25-cv-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause), *aff'd*, 181 F.4th 548 (5th Cir. 2026); *United States v. Nebraska*, 835 F. Supp. 3d 962, 1000 (D. Neb. 2026) (holding Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states'"); *United States v. Oklahoma*, No. 6:25-cv-00265, ECF No. 23 at *1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment) (holding that challenged Oklahoma in-state tuition laws "as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and are unconstitutional and invalid"). This Court should do the same.

6. Moreover, because the Residency Policy is not an enactment of state law that provides for eligibility for public benefits, the Residency Policy also violates 8 U.S.C. § 1621(d). *See United States v. Kentucky Council on Postsecondary Educ.*, No. 3:25-CV-00028-GFVT, 2026 WL 880597, at *9-10 (E.D. Ky. Mar. 31, 2026) (holding Kentucky regulation violated federal law, 8 U.S.C. § 1621(d), because it was a regulation, not an enacted state law as required by Section

1621(d)). Thus, the University of Delaware's Student Residency Policy is preempted twice over, and this Court should join the other courts in invalidating such a policy.

**JURISDICTION AND VENUE**

7. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

8. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because: (1) all Defendants reside in this judicial district, and (2) a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

9. The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, and 2202; and the Court's inherent equitable powers.

**PARTIES**

10. Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities. Plaintiff enforces federal immigration laws through its Executive agencies, including the Department of Justice, Department of Homeland Security ("DHS"), and DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

11. Defendant University of Delaware is a public university in the state of Delaware that implements the Residency Policy.

12. Defendant University of Delaware Board of Trustees established the Residency Policy. *See Policy, supra* at § I.B ("These residency classification guidelines are established by the Board of Trustees under the authority vested in it by the University Charter…"); *see also* 14 Del. C. § 5106.

## FEDERAL LAW

13. The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

14. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, which necessarily includes his duty to take care over immigration matters.

15. The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

16. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish

immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

17. In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2105, 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, § 505, 110 Stat. 3009-546, 3009-672 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See* 8 U.S.C. § 1601(1) ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

18. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." 8 U.S.C. § 1601(2)(A).

19. Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B).

20. Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." *Id.* § 1601(5)-(6).

21. Accordingly, a state funded public university may not offer in-state tuition (or "resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those same benefits are denied to American citizens from other states. *See id.*

§ 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id.*

Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id.*

22. Accordingly, under 8 U.S.C. § 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to all American citizens, regardless of their state of residence.

23. On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[2] ordering federal departments and agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id.* § 2(a).

24. On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[3] directing relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id.* § 5.

---

[2] Exec. Order No 14218, 90 Fed. Reg. 10581, § 2(a) (Feb. 19, 2025) [https://perma.cc/V5KX-DX6Q].

[3] Exec. Order No. 14287, 90 Fed. Reg. 18761, § 5 (Apr. 28, 2025) [https://perma.cc/83KY-N8Q9].

25. These Executive Orders emphasize that state governments must not confer greater benefits to illegal aliens present in our Nation than to U.S. citizens. They also reflect Congress's end—expressed in multiple provisions of the Immigration and Nationality Act—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for U.S. citizens.

**THE UNIVERSITY OF DELAWARE'S RESIDENCY POLICY**

26. Federal courts have long recognized that state funded public universities like the University of Delaware are state actors. *See Eaton v. Univ. of Del.*, No. C.A. 00–709–GMS, 2001 WL 863441, at *4. (D. Del. July 31, 2001) (concluding "that the relationship between the state of Delaware and the University is sufficient under both of the above mentioned tests to establish the requisite amount of state action to trigger § 1983"); *see also Nilsen v. Univ. of Wash.*, 186 F.4th 1133, 1142-43 (9th Cir. 2026); *Edokobi v. Univ. of Mich.*, No. 25-13156 2026 WL 2426060, at *2 (E.D. Mich Feb. 19, 2026), *R. and R. adopted*, 2026 WL 2414947 (E.D. Mich. Aug. 18, 2026); *Est. of Ritter v. Univ. of Mich.* 851 F.2d 846, 851 (6th Cir. 1988); *Harris v. Ariz. Bd. of Regents*, 528 F. Supp. 987, 994 (D. Az. 1981).

27. The University of Delaware rewards an illegal alien with eligibility for in-state tuition, based on residency within Delaware, while explicitly denying eligibility for resident tuition to U.S. citizens who are not Delaware residents. *See Policy, supra* (outlining residency requirements and tuition classifications); *see also id.* § VII.

28. The University of Delaware, like most universities, charges two separate tuition rates for enrollment at the institution: resident and nonresident tuition. *See id.* § I.A; University of Delaware, *Cost of Attendance* (last visited Sep. 1, 2026).[4] For example, the University of Delaware

[4] https://www.udel.edu/students/student-financial-services/coa/.

charges Delaware residents approximately $15,740 for one academic year for tuition but charges non-Delaware residents approximately $42,470 for the same. *Id.*

29. As the name suggests, the University of Delaware's "Student Residency Classification for Tuition and Fee Purposes" classifies students for in-state tuition purposes based on residency in Delaware.

30. Under the Residency Policy's "special residency rules," illegal aliens are eligible for in-state tuition if they meet "ALL criteria below … [and] all other criteria normally required to classify a student as a resident." *Policy, supra* § VII. Those criteria are:

a. The applicant attended a Delaware high school for at least three years; and

b. Graduated from a Delaware high school or received the equivalent of a diploma (GED); and

c. Resided with parent(s) or legal guardian(s) while attending a Delaware high school; and

d. Enrolls at the University of Delaware within 18 months of graduating from high school; and

e. Provides appropriate evidence of application seeking U.S. citizenship or permanent residency.

*Id.* §§ VII(A)-(E).

31. Nothing in Section VII's criteria requires lawful presence in the United States for in-state tuition eligibility for illegal aliens.

32. High school attendance within Delaware is a proxy for Delaware residency. Delaware law mandates all residents ages 5-16 be enrolled in Delaware public schools from kindergarten through grade 12. *See* 14 Del. C. § 202(a) ("The public schools of this State shall be free to persons who are residents of this State and who are age 5 years through 20 years inclusive

when they are attending kindergarten through grade 12"); *see also* 14 Del. C. § 2702(a)(1) ("Every person in this State who has legal custody, guardianship of the person, or legal control of a child between 5 and 16 years of age … shall enroll the child in a public school in the school district of the person's residence"). Section VII of the Residency Policy therefore makes illegal aliens eligible for in-state tuition on the basis of residency. *See Policy, supra* §§ VII(A)-(E).

33. The tuition rate for illegal aliens who satisfy Section VII of the Residency Policy is the same tuition rate as other Delaware residents. Conversely, a U.S. citizen who is not eligible for in-state tuition due to residency requirements is required to pay a higher, nonresident tuition.

34. Thus, through Section VII, illegal aliens residing in Delaware are eligible for in-state tuition so long as they satisfy, among other criteria, Delaware residency requirements, while U.S. citizens residing outside Delaware are not eligible.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF THE RESIDENCY POLICY – 8 U.S.C. § 1623)

35. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

36. The Supremacy Clause of our Nation's Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof … shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

37. The preemption doctrine is derived from the Supremacy Clause. Express preemption occurs when Congress includes express language within the statute indicating its preemptive intent. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

38. Section VII of the University of Delaware's Residency Policy extends eligibility for in-state tuition benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits (lower, resident tuition rates) based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

39. Through that extension of eligibility for in-state tuition benefits to illegal aliens, Delaware's Residency Policy frustrates the federal immigration objectives served by Section 1623 and thereby harms the Federal Government's interests.

40. Accordingly, Section VII of the University of Delaware's Residency Policy is preempted and unconstitutional.

**COUNT II**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF THE RESIDENCY POLICY – 8 U.S.C. § 1621)**

41. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

42. Section VII of the University of Delaware's Residency Policy, which is not an enactment of state law, violates Section 1621(d)'s requirement that illegal aliens "not [be] eligible for any State or local public benefit," unless "through enactment of a State law." 8 U.S.C. § 1621(a), (d).

43. Accordingly, Section VII of the University of Delaware's Residency Policy is preempted and unconstitutional.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

1. That this Court enters a judgment declaring that Section VII of the University of Delaware's Residency Policy violates the Supremacy Clause, because it extends eligibility for

postsecondary education benefits to illegal aliens on the basis of their residence in Delaware but denies the same eligibility for such benefits to U.S. citizens regardless of residence, is preempted by federal law and therefore invalid under the Supremacy Clause.

2. That this Court enter a judgment declaring that Section VII of the Residency Policy violates the Supremacy Clause because it extends eligibility for public benefits to illegal aliens under a policy and not an enactment of State law.

3. That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing Section VII of its Residency Policy, or any similar subsequent policy, because it extends State and local public benefits to resident illegal aliens but not nonresident U.S. citizens;

4. That this Court award the United States its costs and fees in this action; and

5. That this Court award any other relief it deems just and proper.

DATED: October 1, 2026

Respectfully Submitted

STANLEY E. WOODWARD, JR.
Associate Attorney General

ANNA EDWARDS
GARRISON GRISEDALE
Counsel to the Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

HILARY K. PERKINS
Director
Enforcement and Affirmative Litigation Branch

JACQUELINE COLEMAN SNEAD
Deputy Director
Affirmative Litigation Section

*/s/ Ryan C. Silverstein*
Ryan C. Silverstein (NY Bar No. 6275408)
Trial Attorney
Enforcement & Affirmative Litigation Branch
Civil Division, U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
Tel: (202)880-0208
Email: Ryan.C.Silverstein@USDOJ.Gov

*Attorneys for the United States*